May it please the Court, good morning to each of you. My name is Gregory Grabb and I'm the attorney representing Edward Velasco in this proceeding. I wish to thank you in advance for the careful review of the briefs submitted and for the opportunity to present an oral argument on the issues. Quite frankly, I've spent a considerable amount of time preparing my arguments that Mr. Velasco should receive the benefit of the November 1, 2002, Amendment to Section 2D1.1A3 of the Sentencing Guidelines, known as Amendment 640, which added an offense cap of 30 for individuals receiving a mitigating role adjustment. Mr. Velasco was sentenced on July 9, 2002, under the 2000 Guidelines, which did not provide for such a cap. However, Mr. Velasco did receive a mitigating role adjustment in the sentence as a minimal participant. Amendment 640 was added because the Commission determined that ordinarily a maximum base offense level of level 30 adequately represents or reflected the culpability of a defendant who qualifies for a mitigating role adjustment. The District Court determined Mr. Velasco's base offense level at level 32, which was consistent with the 2000 Guidelines then in effect. However, if Mr. Velasco had been sentenced after November 1, 2002, his base offense level would have been level 30. Consequently, the primary focus of my preparation for today's hearing was to address the issue of whether the application of Amendment 640 was retroactive and therefore a viable issue in this appeal. I understand that Amendment 640 is not specifically listed in the Sentencing Guidelines Section 1B1.10 as having a retroactive effect. The law in this circuit is that the substantive amendments to the Guidelines that occur between the date of sentencing and the resolution of an appeal have no retroactive effect unless specifically referenced in Section 1B1.10. That's the Ortiz case. However, amendments that simply clarify the Guidelines rather than substantively change them can be applied retroactively, and that's the holding of the Sanders case. Basically, I was prepared to say that although both the amended text and the commentary associated with the Amendment 640 was silent on the issue of retroactivity, the question could still be resolved by examining whether the amendment simply clarified the Guidelines rather than substantially changed them. There's a considerable authority in the circuit where the courts have determined the retroactivity of various amendments by using the clarification versus substantive analysis, substantive change analysis. However, my argument that Amendment 640 simply clarified the Guidelines was squarely rejected by this Court within the last week. On October 30, 2003, in the case of United v. Diaz-Cardenas, I only have the Westlaw site on that, but the Westlaw site is 2003 W.L. 22455762, Ninth Circuit, California. This Court ruled that Amendment 640 cannot be applied retroactively. I think you better move on to your other arguments. Right there, Judge. I'm just... No, I appreciate it. What I'd like to do, though, Judge, is because the case hasn't... It's not final. You need to preserve it. It's not final at this point. It hasn't been... It's four days, six days ago. You don't know what the petition... Right. I wanted to bring it to the Court's attention and then reserve the issues if I could in case there's an appeal further on in the appeal. Knowing that, Judge, I would move on to my other comments. Initially, I would like to argue that Mr. Golasco clearly had a minimal rather than a minimum participation pursuant to Section 3B1.2 of the Guidelines. The District Court found that he was a minor participant in the conspiracy, resulting in a two-level decrease pursuant to Section 3B1.2b. Our position is that he was a minimal participant pursuant to Section 3B1.2a of the Guidelines Manual, and therefore he should have been granted a four-level decrease. The offenses charged in this case arose after a two-year investigation conducted by both federal and state officials. The investigation resulted in seven indictments involving over 70 defendants who were charged with multiple violations of the federal narcotics laws, including prohibiting the operation of a continuing criminal enterprises conspiracy to deliver and distribute heroin, cocaine, methamphetamine, and marijuana. Multiple wiretaps were involved, and these wiretaps involved resulted in over 1,000 recorded conversations. Now, with respect to Mr. Golasco, the pre-sentence report noted that, quote, the facts of this case suggest that Golasco was among the least culpable of those involved in the conduct of the group of conspirators. In this regard, the evidence shows that Golasco's role was limited to transporting the 51.5 grams of pure methamphetamine, which resulted in his arrest on April 27, 2000. After his arrival on Maui, Golasco contacted an individual in California who, in turn, contacted an individual known as Felipe Ruiz Castro. There is no evidence that Golasco was involved in any other conduct pertaining to the conspiracy, end quote. This is from the pre-sentence report. The record indicates that Golasco merely acted once as a mule in this apparently vast and defendant's conduct relative to other participants in the offense. And I'll leave out the footnotes which define that. I'm sure the Court is aware of what the standards are. But I would point out that there was no evidence submitted to the District Court which showed that Mr. Golasco understood or had knowledge of the scope or the structure of the enterprise and the activities of others involved other than just a general knowledge that there was a smuggling operation going on. I was able to find a similar factual scenario which was reviewed by this Court in United States v. Sanderson. I can leave this site out if that's okay. In that decision, this Court held that the low Mr. Golasco's conduct clearly should have been deemed minimal and not minor. Second, the sentencing guidelines provide that the sentencing court may depart downward if the applicable criminal history category, quote, significantly over-represents the seriousness of the defendant's criminal conduct. And that's taken from the sentencing guidelines section 4A1. One of the problems with that issue is whether we're allowed to review that. Judge, I believe that it can be reviewed under a clearly erroneous error standard. I thought there were some cases that treated that as if it were a downward departure. In which case, we wouldn't be able to review it. Judge, it's my understanding that the Court does have discretion to make a determination that the criminal history of the defendant is not really accurate of what happened. And as you may recall, the entire criminal history of Mr. Golasco was based upon two DUIs which he received in California. No, no, I do recall that the facts... Pardon me? I do recall, yes, the facts. He had two DUIs and those were his own. Yes, Judge, and with the associated probation violation, which added another two points, it put him up into a category three. I'd point out to the Court that any other defendant who has a, say, a felony, any type of felony, over a year and a month in jail or in prison, would receive three points for his criminal history record. Now, somebody who's been convicted of murder, I think, is underrepresented in terms of his criminal history based on that scenario. And I believe the reverse is just true here in taking Mr. Golasco's case. An examination of the way that the history category is calculated, it turns out that DUIs are way at the very end of the offenses which would count. In fact, it's not even enumerated in the normal categories, which enumerates which offenses are counted and which ones are not. It's actually contained in a footnote which follows in the commentary. My point is this, that the combination of the two DUIs plus the probation violation, which admittedly are serious violations, put him into a criminal category which overrepresented his profession in the crimes. He's in a category higher than somebody who had had a very serious felony on his record. Now, I could find nothing in the guidelines which concluded the district court from departing found, as I've argued, that placement in Category 3 rather than Category 2 significantly exaggerated the seriousness of his conduct. I think we're going to have to bring this to an end. We've got to our ten minutes. If you want a minute, you can wrap it up. If I could, Judge. The other issue that I'll just very briefly add related to that, Judge, is that I think that we can consider Mr. Golasco's conduct as aberrant behavior. This particular downward departure provision has been codified, November 1, 2002, in Section 5K2.20 of the guidelines that would apply to this case. And, in fact, there was prior case law which the courts had granted substantial departures in this area even when they had a criminal history. I would argue that, given this aberrant behavior, that he should have been given a substantial downward decrease. Finally, Your Honor, Mr. Golasco demonstrated his acceptance of responsibility contrary to what the government has held. He didn't plead out on the end of trial. At the end of trial, he had made his intentions known early on in the case and that he would change his plea following the disposition of his motion to suppress. The change of plea came out the eve of the trial because there was a delay in working out the details. Even though the government says they had prepared for trial, it is actually true, but it's not quite true to Mr. Golasco because they had to prepare for the motion for suppression in any event. Irrespective of whether the government objected on that grounds, I still believe that he is entitled to a decrease based upon Section 3E1.1B1 because he, quote, timely provided complete information to the government concerning his own involvement. I don't think we're way over. And you covered all of this pretty well in the briefing. I did, Your Honor. And just as a note of explanation, Judge, I spent an awful lot of time on this issue of 640, and it was only yesterday I find the case from last week, and, Judge, that we had a disadvantage. Yes. And I apologize that I've repeated myself. No, no, you have. We understand. We prepared for it the same way you did. Yes. Thank you very much. Please support time with the United States. Good morning again, Your Honor. This is a case where I believe the district court judge carefully went through a sentencing hearing that was bifurcated to concern herself with the question of the number of convictions, the question of the defendant's minor versus minimal role, the question of whether the defendant had timely cooperated or had provided full and complete information to the United States in a timely fashion or made a notification that he would not go to trial in sufficient time to state the court sufficient assets in that regard in judicial economy. I'll submit on the brief, unless the court has any particular questions as to the facts, or did any defendant in this multi-defendant case get a minimal role adjustment? No one that was carrying this amount of drugs. No courier did. That wasn't an answer. Did any defendant? I think there were people that got minor roles. I'm not sure about minimal, Your Honor. I don't think so. Was there any evidence that he had done anything other than carry the drugs on this one occasion? Other than the telephone calls that were charged? No. Well, he had made a telephone call a day before asking for money to ensure that he would be able to travel, come from California to Hawaii. He had been intercepted talking to Mr. Ruiz. Right. That's on this one occasion. Yes. So I'd ask, is there any evidence that this was anything other than an isolated case? No. I'm not aware of it, Your Honor. What was his sentence? I want to say 19. 19 months? 119 months? 120 months, Your Honor, imposed on July 9, 2004. The court gave him the minor role, not the minimal role. Right. My question was, did anybody get a minimal role? I don't remember that. I don't remember that. People did get minor roles. I don't remember the minimal roles. No courier got a minimal role. I know that. This was one of the larger interceptions of ICE that we made in Hawaii. We caught it on the mainland with other individuals before it got to Hawaii. This was one of the few that we caught at Kahului. We tried to keep it because it was a wire trap. We tried to do the interceptions, intercepting the couriers as far away from the wire trap, as far away from Maui as possible. We tried to do the interceptions on the mainland. And we did. Ontario, LAX, Honolulu. This was when we did it on the other island, where they took it to the other island, to the big island. How many people were involved in this conspiracy? There were two. In this conspiracy, Judge, there were five indictments. This was part of a general conspiracy, wasn't it? There were five indictments in this conspiracy, five separate indictments of roughly ten people. I think we indicted 62 in this Felipe Ruiz Castro indictment, which was for the Mexican restaurant in Lahaina. And then in Jorge Salazar Guion, the landscaper that was running heroin, largely, there were 24? Yeah, 24. 86 defendants in the two ranks. Did any of them get less than ten years? Yes. There were a number of people that, of course, qualified for a safety valve. A number of people cooperated right off the bat, Your Honor. And we filed motions for downward departures for substantial assistance on many of them. I could look at the indictments. No, no, not just the superiors in general, but how this all fit together. Yes. Yeah, the ones that got downward departures were the ones that testified against either superiors or underlings. Either superiors or underlings were agreed to right off the bat. Mr. Ruiz got a substantial downward departure. He played to a continuing criminal enterprise and got a sentence of, I think, Judge Mulway sentenced him. I think he got eight and a half years. Oh, he was one of the ringleaders? He was the ringleader, Your Honor. It was his restaurant. And this guy did one transaction? One. And he had two prior drunk drivings, and he got more than this guy was running the whole drug industry? He was also found to be not candid by Judge Mulway, and Mr. Ruiz was found to be very truthful by the judge. Is Ruiz a fine, upstanding citizen? Oh, he's not a fine, upstanding citizen, and he's serving that sentence. He is serving that sentence, but he cooperated. Doesn't that seem, this has nothing to do with it, because we're at the end of the day. Yes, sir. Doesn't that seem a little anomalous to you that the ringleader of the whole operation would get eight and a half years and the guy who makes one delivery, as far as you know, would get 10 years? Isn't there something wrong with that? Congress has said there are built-in carrots and sticks to the sentencing guidelines, which are the statutes, the Title 21 and the Title 18, that allow individuals to assist and better their positions. This gentleman did not. The defendant did not. He was not truthful with us. He held the government's feet to the fire, made them put on the motion to suppress. He was found to be— Well, as you know, you're not supposed to penalize people for following motions. No, absolutely not. No, it's not as if he did anything. No. He never even asserted constitutional rights. And he did. He asserted his constitutional rights all the way and did not help the United States in other cases, which he could have done, which is what Mr. Ruiz did and a number of other individuals did. But there's a certain amount of irony, and this isn't the only case we see it. Well, of course, we didn't argue for a less-than-10-year sentence. We argued for a substantial sentence over 10 years. We argued for a 12-and-a-half-year sentence for Mr. Ruiz. Judge Mulway gave him an 8-and-a-half-year sentence. Because of the amount of drop that he brought in and the harm he had caused to Mali, to our district, we could not ignore that. He did not have the prior convictions. He did not have the criminal history. And his guideline range was higher. He had a mandate for 20 years under the 848, Your Honor, of course. And we took that into consideration. But we, of course, are obligated to tell the court. We told the court. His counsel was good counsel, argued very vigorously that he had cooperated. He had testified for the United States in a couple of trials. He had a number of things going for him that made him a sympathetic character at sentencing. He had a child that physically had a problem with him. And he had done what we had done. When we filed the motion for substantial assistance, the court is well aware that the district court can go all the way down. It can go all the way down to what it feels is appropriate. And we argued for over 10 years because we did believe that he had caused substantial harm to our community. Thank you, counsel. Thank you, Your Honor. Okay. Thank you very much, counsel. The case is argued to be submitted. The final case of the morning.
judges: Browning, Reinhardt, Thomas